**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | |
| | : | **Chapter 13** |
| **DEBORAH MARIE COLLINS,** | : | |
| | : | |
| and | : | |
| | : | |
| **JASON ROBERT COLLINS,** | : | |
| | : | **Bankruptcy No. 19-14224-AMC** |
| | : | |
| **DEBTORS** | : | |
| | : | |
| | : | |
| **JENNIFER A. MENGES,** | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| v. | : | **Adv. Pro. No. 19-00203-AMC** |
| | : | |
| **DEBORAH MARIE COLLINS,** | : | |
| | : | |
| **DEFENDANT** | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I.    INTRODUCTION

In this adversary proceeding, plaintiff, Jennifer Menges ("Plaintiff"), seeks a

determination that a $50,000 personal injury pre-petition arbitration award she obtained against

her sister, defendant, Deborah Marie Collins ("Defendant"), in the Montgomery County Court of

Common Pleas ("Arbitration Award") is nondischargeable under 11 U.S.C. § 523(a)(6).

Defendant argues she did not willfully or maliciously injure Plaintiff and, therefore, the

Arbitration Award should be found dischargeable.

Because the Defendant willfully, maliciously, and intentionally injured the Plaintiff

during a verbal dispute when she purposely pushed Plaintiff from behind without warning or

1

provocation, causing her to sustain a serious knee injury, the Arbitration Award issued in favor

of the Plaintiff on account of that physical altercation is nondischargeable pursuant to 11 U.S.C.

§ 523(a)(6).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Birthday Party Altercation

On September 30, 2017, Plaintiff and Defendant attended a birthday party ("Birthday

Party") for Defendant's children held at the home of their aunt, Marylou McNevin ("Aunt"),

located at 2 Franklin Street, Fallsington, Bucks County, Pennsylvania ("Franklin Street

Property"). Ex. M-26; Trial Tr. 29:20-30:3, 30:19-24, 35:6-19, June 14, 2021 ("Trial Tr.").

Around just before 7:00 p.m. that evening, several hours after Plaintiff and Defendant had

arrived at the Birthday Party, Plaintiff and Defendant began to argue while seated in the living

room in front of other family members, including their mother, Margaret Zordan ("Mother"),

their Aunt, and Plaintiff's husband, Jon Menges ("Mr. Menges"). Trial Tr. 29:25-30:10, 45:17-

46:2, 49:4-16, 107:15-22, 108:5-12, 111:21-112:13, 199:8-25. Eventually, Plaintiff and

Defendant decided to continue the dispute outside away from the children present at the Birthday

Party. *Id.* at 31:10-12, 49:10-16, 112:7-11. Plaintiff, Defendant, Mr. Menges, and the Aunt all

went outside where a physical altercation took place between Plaintiff and Defendant which

resulted in the Plaintiff sustaining a significant injury to her right knee. *Id.* at 30:25-31:24, 49:23-

25, 61:3-19, 112:7-13. *See also* Ex. M-18. Following the physical altercation, Plaintiff went to an

urgent care center to attend to her injuries. Trial Tr. 32:7-10, 51:24-52:5. At some point that

evening, the police were called, and a criminal complaint was filed against Defendant in Bucks

County, Pennsylvania, charging Defendant with simple assault and disorderly conduct

("Criminal Action"). *Id.* at 32:11-16; Ex. M-15.

### B.  Bucks County Court of Common Pleas Criminal Action

On March 13, 2018, Defendant pled guilty to simple assault by mutual combat and "disorderly conduct engage in fighting" pursuant to a negotiated guilty plea with the Commonwealth of Pennsylvania. Ex. M-15; Ex. M-16 Guilty Plea & Sentencing Tr. 2:3-4:25. The same day, a hearing was held on her guilty plea and for sentencing before the Bucks County Court of Common Pleas ("Bucks County CCP"). Ex. M-16. Plaintiff was not consulted regarding Defendant's plea deal. Trial Tr. 92:21-23, 93:9-10.

In pleading guilty to simple assault by mutual combat, Defendant admitted that she "attempted to cause, or intentionally, knowingly, or recklessly caused, bodily injury to another, namely, Jennifer Menges." Ex. M-15. *See also* Ex. M-16 Guilty Plea & Sentencing Tr. 4:8-11, 20 ("And in this case the simple assault was that you attempted to cause or intentionally or recklessly caused bodily injury to Jennifer Menges."). In pleading guilty to "disorderly conduct engage in fighting," Defendant admitted that she "with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, engaged in fighting or threatening, or in violence or tumultuous behavior, and the intent of the actor was to cause substantial harm or serious inconvenience, or the actor persisted in disorderly conduct after reasonable warning or request to desist." Ex. M-15. *See also* Ex. M-16 Guilty Plea & Sentencing 4:11-16, 20 ("And with respect to the disorderly conduct charge is that you, with intent to cause public inconvenience or annoyance, that you engaged in fighting or threatening to fight and to otherwise engage in tumultuous behavior."). She also admitted that on the evening of September 30, 2017, she and Plaintiff got into a "verbal argument" on the "front lawn" of the Franklin Street Property and that "[d]uring the course of the argument Ms. Collins [Defendant] tackled the

victim [Plaintiff] to the ground, causing a large swelling to the victim's right knee." Ex. M-16

Guilty Plea & Sentencing Tr. 3:12-24, 4:16-23.

During the hearing, after the judge accepted the guilty plea and issued Defendant's

sentence, he made the following remarks to the Plaintiff, who was present:

> THE COURT: Ms. Menges, let me say to you, while your sister apparently has
> some mental health issues, it's incumbent upon you not to engage in behaviors
> that would set her off, whatever the reasons may be. Families need to be able to
> get along with one another, and if they can't get along, then either they have to
> stay apart or understand where the trigger points are and try to avoid having those
> trigger points get pressed. Because no one wants to see someone get hurt. In this
> case you apparently were injured.
> MS. MENGES: Tore my ACL.
> THE COURT: So it's incumbent on both sides to exercise some control so they
> don't let something like this happen again.
> MS. MENGES: I understand, your Honor. Thank you.

Ex. M-16 Guilty Plea & Sentencing Tr. 9:4-21.

### C.  Civil Action Montgomery County Court of Common Pleas

In November 2017, Plaintiff filed a personal injury civil complaint in the Montgomery

County Court of Common Pleas ("Montgomery CCP") against Defendant based upon the

physical altercation which occurred at the Birthday Party ("Civil Action"). Civ. No. 26936,

November Term, 2017; Ex. M-32.[1] Default judgment ("Civil Action Default Judgment") was

entered in favor of Plaintiff and against Defendant. *See* Ex. M-17. Defendant filed a motion to

open the Civil Action Default Judgment which was denied on October 5, 2018. Ex. M-17.

Subsequently, damages were assessed by an arbitration panel in favor of Plaintiff and against

Defendant in the amount of $50,000, resulting in the $50,000 Arbitration Award against

Defendant. Ex. M-23.

---

[1] The Court takes judicial notice of the fact that the allegations in Plaintiff's Civil Action complaint relate to the physical altercation which occurred at the Birthday Party. *See* Ex. M-32 ¶¶ 4-7.

4

### D. Bankruptcy Filing

On July 2, 2019, Defendant and her husband, Jason Robert Collins ("Mr. Collins,"

collectively with Defendant, "Debtors") filed a voluntary petition under Chapter 7 of the

Bankruptcy Code. Case No. 19-14224-amc ECF 1. On October 30, 2019, Debtors filed a notice

to convert the case from Chapter 7 to Chapter 13 of the Bankruptcy Code. *Id.* at ECF 81. On the

same day, the Court issued an order converting the case to Chapter 13 of the Bankruptcy Code.

*Id.* at ECF 84.

### E. Adversary Proceeding

On October 16, 2019, Plaintiff filed a complaint against Defendant seeking a declaration

that the Arbitration Award is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) ("Complaint").

Case No. 19-00203-amc ECF 1 Compl. p.1, 5. On December 16, 2019, Defendant filed an

answer essentially attributing Plaintiff's injuries from the Birthday Party to Defendant

accidentally falling on Plaintiff. Case No. 19-00203-amc ECF 10 Ans. ¶ 14. On January 17,

2020, Plaintiff filed an amended complaint ("Amended Complaint") seeking substantially the

same relief after the case was converted to Chapter 13. Case No. 19-00203-amc ECF 12 Am.

Compl. p. 1, 5, 6. On March 2, 2020, Defendant filed an answer to the Amended Complaint.

Case No. 19-00203-amc ECF 25. On June 14, 2021, the Court held a trial over Zoom ("Trial")

where five witnesses testified: Plaintiff, Defendant, their Mother, their Aunt, and Mr. Menges.

Case No. 19-00203-amc ECF 43; Trial Tr. 2:5-25. All witnesses except for the Defendant were

sequestered during each other's testimony. Trial Tr. 25:20-29:5. *See also* Trial Tr. 196:16-17.

The Court found the testimony of the Aunt particularly credible given her status as the

only eyewitness without any stake in the outcome of this adversary proceeding and the fact that

she had not spoken with Plaintiff since the Birthday Party. Trial Tr. 103:23-25. According to the

Aunt's testimony, after Plaintiff and Defendant exited the Franklin Street Property out the front

door, which has a small threshold attached to it and a small step down from the threshold to the

lawn, they walked across the front lawn towards the public sidewalk and "right in front of" the

Aunt, in the middle of the front lawn, Defendant "put both hands on her sister's back, and pushed

her to the ground. Then somehow, Debbie [Defendant] wound up on top of her sister and I recall

John lifting her off of her sister." Trial Tr. 31:13-24, 37:5-9, 38:14-15, 39:1-40:14, 42:7-8. *See*

*also* 219:16-25 ("not only is there the threshold there, as Mr. Menges had said in his testimony,

there's also – you can call it a porch or a stoop or a landing that's just outside and there's a small

– there's a small step down from that to the ground."). The Aunt's testimony regarding what

happened on the front lawn remained consistent the entire trial, as further demonstrated by the

following exchange which occurred on cross examination:

> Q: Okay. When did she [Defendant] start falling?
> A: She – I – I don't know. She – she pushed Jennifer with both her hands on her
> back. Jennifer went down to the ground and Debbie wound up on top of her. How,
> I don't know. Whether – whether Debbie tripped over Jennifer, or – I – I really – I
> don't know what her intent was and I can't speculate what was going on in
> someone's head.
> Q: And the – and the action you were describing as – as pushing, isn't it true
> that's exactly what it would look like if somebody fell and grabbed the person that
> was right in front of them?
> MR. BRENNAN (counsel for Plaintiff): Objection, speculative. She's –
> THE COURT: No. You know, I want – I want her to answer that question.
> Overruled.
> THE WITNESS: I don't believe so. No.
> BY MR. MCFARLIN (counsel for Defendant): You don't? Are you sure, Ma'am?
> Because that's important to know. I mean, you're testifying today that you believe
> that Mrs. Collins literally pushed Mrs. Menges.
> A: She had her hands like this, and they went like that. That's all I can tell you.
> To me, that is a push.
> Q: So she was between you –
> A: Not a brace.

*Id.* at 41:6-42:3.

Similarly, Mr. Menges recalled "shortly after moving outside and getting to those positions, with – without any real warning or – or predication of anything, Deborah took several steps rapidly and forcefully and tackled my wife, tackled Jennifer to the ground, wrapping her arms around her. I mean, it looked like a football tackle." *Id.* at 112:21-113:1. He further explained:

> I really didn't believe what I was seeing at first. So by the time I got anywhere to do anything about it, I was at – I went over to where B is because Debbie had not yet gotten off Jennifer, despite Jennifer's pleadings to do so. I took Deborah off Jennifer, being very careful not to hurt her because I didn't want to make the situation worse…I put her in a I guess what could be described as a bear hug…

*Id*. at 113:4-13.

He did not see the Defendant's legs tangle with the Plaintiff's legs or the Defendant trip prior to Defendant making contact with Plaintiff. *Id.* at 117:1-9.

The Plaintiff recalled:

> [a]s I exited the home, I got about halfway to two-thirds in the front of the yard, where I was tackled, where I was impacted, and I fell forward in like a prone position. So I was like face-first on my stomach and it knocked the wind out of me. And I immediately realized for some reason, I couldn't get up. So I twisted my body to, like, my left and my sister was on top of me, grabbing at my neck.

*Id.* at 49:23-50:4.

In contrast to the above accounts, Defendant represented:

> I don't know exactly how we fell, if it was because our feet got tangled, if it was because we tripped on the landing, if it was because we tripped on that little porch. I fell forward. We both fell together, and we both fell right outside that front door. I didn't walk in any single direction. I am very – that – I may not know how things happened, but I do know where things happened. I was right behind her, and it was right outside the door.

*Id.* at 220:15-22.

She further explained:

> I don't know if I tripped on her feet. I don't know if I misjudged the landing. I
> don't know if I stepped wrong, but I – I fell into her. We both fell on the ground.
> And on my way down, I – I absolutely – I don't know what I grabbed. I'm sure I
> grabbed her. I'm sure I grabbed all of her.

*Id.* at 224:2-7.

Plaintiff did not "punch, push, or touch Deborah in any assaultive way" nor "strike" the

Defendant prior to Defendant tackling Plaintiff, and Plaintiff had no warning prior to being

tackled. *Id.* at 53:5-9, 55:6-11, 113:22-114:1, 126:18-22, 243:18-23 (Defendant testifying in

response to being asked if Plaintiff struck her, punched her, hit her, or took any physical act

toward her prior to the altercation that "no one was punching or kicking anyone."); Collins Dep.

37:23-38:25, Oct. 21, 2020 ("Collins Dep.").

With respect to the location of the physical altercation, the Aunt unequivocally testified

"I also can tell you that it was nowhere near the door that they – when – when the incident

happened." Trial Tr. 38:14-15. Her testimony that the physical altercation happened at least in

the middle of the front lawn and nowhere near the front step was corroborated by two of the

other eyewitnesses – Plaintiff, who was obviously involved in the altercation, and Mr. Menges.

*Id.* at 31:13-18, 39:2-5, 40:1-14, 49:23-25 ("As I exited the home, I got about halfway to two-

thirds in the front of the yard, where I was tackled, where I was impacted, and I fell forward in

like a prone position."), 123:2-4 ("Absolutely not. The – the attack, tackle, did not take place on

or near the front porch in any way, shape, or form."), 125:22-126:3 ("Q: All right. So just for

clarify [sic], Mr. Menges, where exactly did the tackle take place? With reference to this

particular exhibit, being exhibit 31? A: Approximately where I've labeled point B, which is

about two-thirds of the way from the – the front stoop/porch/landing/whatever you want to call it

to the front sidewalk.").

Defendant was the only witness to testify that she fell and tripped right outside the front door, but notably, had no explanation for how she actually tripped. *Id.* at 220:11-22, 221:8-10, 222:11-13 ("We fell straight, to the best of my recollection. It was just outside the door. I – I have no recollection of taking a step in any direction."), 223:24-224:11, 238:13-22. *See also* Collins Dep. 31:23-25 ("So the entrance of the doorway, where there's a landing, is where Mrs. Menges and I fell. So we landed outside, having fallen from the landing in the doorway.").

Plaintiff and Defendant also disagree, to an extent, on the subject matter of the verbal dispute which culminated in the physical altercation. According to Plaintiff, prior to the physical altercation, she and Defendant had been discussing their Mother's upcoming move to a retirement community when Defendant made some comments which Plaintiff perceived as hostile and sarcastic to the effect of "[o]h, everything will just be so fine and perfect when you move to your retirement community. It must be nice to have so much money" and that "she felt that everything would go fine because Jen's involved." Trial Tr. 46:3-6, 48:20-49:3, 81:15-82:4. According to Plaintiff, these comments escalated the conversation, resulting in Plaintiff loudly retorting at Defendant "you know, Debbie, what would you know about any of this? You're not helping your mother. You're not involved." *Id.* at 49:4-9. Shortly thereafter, Plaintiff and Defendant agreed to take the discussion outside where the physical altercation ultimately took place. *Id.* at 49:10-16

Both Mr. Menges and the Mother recall the discussion leading to the physical altercation as Plaintiff recalls it. *Id.* at 111:13-112:1 (Mr. Menges testifying that "I remember that there was a discussion that got heated. It had to do with my mother-in-law, Jennifer and Debbie's mother, moving into a retirement community. And Debbie made the comment that 'Well, I'm sure it will go just swimmingly since Jen's in charge of it.' And that led to some unpleasant discussions kind

of back-and-forth."), 178:3-11 (the Mother testified "It was mentioned that I was going to go to Shannondell and that I was getting ready to move and Debbie said that she thought that I was going to be very well cared for, but said it in a very sarcastic way. And my other daughter said that she wouldn't know what was being involved with the move that was going on because she hadn't helped me with any of the move…"). The Aunt does not recall the particulars of the discussion in the living room other than that the dispute was over "something very trivial." *Id.* at 36:4-8

While Defendant too recalls that she and Plaintiff were discussing the Mother's upcoming move to a retirement community and that the conversation escalated after she said that she was sure the move would go well since Plaintiff was helping, she also recalls prior to the physical altercation Plaintiff threatening to take her interest in her home, which Plaintiff and Defendant co-own, through a deed partition action. *Id.* at 200:4-201:9. Neither Plaintiff, Mr. Menges, the Aunt, or the Mother recalls Plaintiff mentioning a deed partition action prior to the physical altercation. *Id.* at 35:20-36:8, 70:16-71:10, 157:7-159:25, 177:25-178:2.

At no point in the immediate aftermath of the physical altercation or otherwise subsequent to the Birthday Party did Defendant ever apologize directly to Plaintiff for injuring her. *Id.* at 68:12-16, 131:1-13, 229:3-20, 240:1-14. In fact, at some point after Mr. Menges lifted Defendant off Plaintiff, she began yelling obscenities at Plaintiff for about a minute until Mr. Menges attempted to record her on video with his cell phone. Trial Tr. 50:16-51:10, 54:4-12, 56:16-57:16, 76:8-9, 127:6-15, 131:7-13, 153:18-154:3. *See also* Trial Tr. 31:19-22 ("Then somehow, Debbie wound up on top of her sister and I recall John lifting her off of her sister. And I asked Jennifer if she was okay. She got up. They continued to argue.").

At the conclusion of the trial, the Court set a schedule for the parties to submit post-trial

briefs. *Id.* at 254:1-255:15. On July 13, 2021, Plaintiff filed her post-trial memorandum. Case

No. 19-00203-amc ECF 46. As of the date of this Opinion, Defendant never filed a post-trial

brief.

## III.    DISCUSSON

Plaintiff argues that because Defendant willfully and maliciously injured her by shoving

her to the ground, the Arbitration Award issued on account of injuries sustained at the Birthday

Party should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Defendant argues

that because she unintentionally injured Defendant when she accidentally fell on her, the

Arbitration Award is dischargeable.

The Court concludes that the Arbitration Award is nondischargeable pursuant to 11

U.S.C. § 523(a)(6) because, based upon the evidence and testimony presented at trial,

particularly the Aunt's credible testimony, which was corroborated by every eyewitness except

Defendant, Defendant willfully and maliciously injured Plaintiff by intentionally, and without

just cause or excuse, pushing Plaintiff to the ground causing her significant bodily harm.

### A.  11 U.S.C. § 523(a)(6)

Pursuant to 11 U.S.C. § 523(a)(6):

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this
title does not discharge an individual debtor from any debt—
 ...
(6) for willful and malicious injury by the debtor to another entity or to
the property of another entity.

Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors.

*Carmelo v. Mickletz (In re Mickletz),* 544 B.R. 804, 812 (Bankr. E.D. Pa. 2016). To succeed on a

§ 523(a)(6) claim, the plaintiff must prove by a preponderance of the evidence that the injury to

the plaintiff was both willful and malicious. *Beard Research, Inc. v. Kates (In re Kates),* 485

B.R. 86, 100 (Bankr. E.D. Pa. 2012). "The term 'willful' refers to a deliberate or intentional

injury, not just a deliberate or intentional act that leads to injury." *Id.* "Actions taken for the

specific purpose of causing an injury as well as actions that have a substantial certainty of

producing injury are 'willful' within the meaning of § 523(a)(6)." *Id.* "[D]ebts arising from

recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[2] *J&V*

*Developers, Inc. v. Malloy (In re Malloy)*, Civ. A. No. 15-5046, Bankr. No. 14-17727, Adv. No.

14-687, 2016 WL 2755593, at *7 (E.D. Pa. May 11, 2016) (quoting *Kawaauhau v. Geiger*, 523

U.S. 57, 63–64 (1998)).

"'Malice' refers to actions that are wrongful and without just cause or excuse, even in the

absence of personal hatred, spite or ill-will." *In re Kates,* 485 B.R. at 101. A debtor may act with

malice without bearing any subjective ill will toward the creditor or any specific intent to injure

the same. *Id.*

### B. The Arbitration Award Constitutes a Debt for a Willful and Malicious Injury Under 11 U.S.C. § 523(a)(6).

As a threshold matter, the parties agree that Plaintiff sustained a severe injury to her knee

as a result of the Defendant's actions during the Birthday Party. Trial Tr. 61:3-19.

Additionally, based on the totality of the circumstances, the Court concludes that after

exiting the Franklin Street Property and walking towards the public sidewalk to at least the

middle of the front lawn, Defendant willfully shoved Plaintiff to the ground. The most credible

---

[2] Because reckless behavior could have satisfied the elements of the charges which Defendant pled guilty to, simple assault and "disorderly conduct engage in fighting," Defendant's guilty plea does not preclude her from arguing that she did not act with the requisite scienter when she injured the Plaintiff. As stated, injuries inflicted recklessly or negligently do *not* qualify as willful. *In re Fleisch*, 543 B.R. 166, 171 (Bankr. M.D. Pa. 2015) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). If the previous proceeding on a claim required a less rigorous level of scienter than that required under the willful and malicious standard of § 523(a)(6), issue preclusion is not available. *Beard Research Inc. v. Kates (In re Kates)*, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012).

eyewitness, the Aunt, who no longer has any relationship with the Plaintiff and who has no stake in this adversary proceeding, consistently testified that after Plaintiff and Defendant walked from the living room to the middle of the front yard nowhere near the front porch step, Defendant pushed her sister using both hands and ended up on the ground on top of her. This account was corroborated by Mr. Menges, who recalled the fall happening at least in the center of the lawn, if not farther from the front porch step, and that Defendant forcefully shoved Plaintiff and tackled her the ground. Plaintiff for her part also recalled the altercation happening nowhere near the front porch step and did not perceive any twisting of her and her sister's legs or tripping on Defendant's part. Trial Tr. 52:10-13.[3]

Defendant's insistence that she only accidentally tripped and fell on top of Plaintiff just at the bottom of the front step of the Franklin Street Property but with no explanation for how it happened is simply self-serving and not credible. In the absence of any evidence of significant tripping hazards on the front lawn where the physical altercation actually occurred, the Court simply cannot speculate regarding how Defendant would have realistically "accidentally" tripped

---

[3]     The Aunt's account is also consistent with the facts which Defendant admitted by virtue of her guilty plea – that she tackled Plaintiff to the ground. In Pennsylvania, "a conviction from a guilty plea is equivalent to a conviction from a trial-by-jury." *Domitrovich v. Monaca,* No. 2:08cv1094, 2010 WL 3489137, at *9 (W.D. Pa. Sept. 1, 2010). A criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial and prevents questions of law or issues of fact determined in the criminal proceedings from being relitigated in a subsequent civil suit. *Ramsey v. Harley,* No. Civ. A. 00-3909, 2002 WL 32349129 at *1 (E.D. Pa. March 8, 2002); *Columbia Medical Group, Inc. v. Herring & Roll, P.C.,* 829 A.2d 1184, 1191 (Pa. Super. Ct. 2003). In Pennsylvania, for a trial judge to accept a guilty plea, the Commonwealth must present a factual basis supporting the guilty plea and the defendant must agree to it. *Commonwealth v. Hines,* 496 Pa. 555, 560 (1981). A party is collaterally estopped from denying facts which formed the factual basis for the entry of a guilty plea. *Domitrovich,* 2010 WL 3489137, at *5. Guilty pleas may also establish elements of nondischargeability in bankruptcy proceedings if facts supporting the guilty plea are identical to those needed to establish nondischargeability. *Swarcheck v. Manidis (In re Manidis)*, Bankr. No. 92-17643 DWS, Adv. No. 93-0181, 1994 WL 250072, at *4 (Bankr. E.D. Pa. May 27, 1994).
          Based on the foregoing, Defendant cannot contest that on September 30, 2017 around approximately 7:00 p.m., Plaintiff and Defendant got into an argument on the front lawn of the Franklin Street Property and during the course of the argument, Defendant tackled Plaintiff to the ground, causing a large swelling to Plaintiff's right knee, as those were the facts underlying her guilty plea which she affirmatively agreed to at her hearing on her guilty plea and sentencing and are the same facts which this Court would need to determine to make a declaration regarding the dischargeability of the Arbitration Award based on the same conduct. Ex. M-16 Guilty Plea & Sentencing Tr. 3:12-4:25.

and fell on Plaintiff from the middle of the substantially level front lawn. *See* Trial Tr. 101:7-
102:11.

Ultimately, Defendant pushing Plaintiff from behind with no warning in a moment of

anger and with enough force to knock her to the ground and cause a significant knee injury is *at*

*least* substantially certain to produce injury, as well as sufficient to establish subjective

awareness that such conduct was substantially certain to do so. *In re Mickletz,* 544 B.R. at 819.

*See also Kleman v. Taylor (In re Taylor)*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004) ("And,

this Court agrees that, even under the higher standard espoused in *Geiger*, that the Defendant's

actions were, in fact, 'willful' based upon the common sense notion that when one physically

hits another with enough force to break another's jaw, an alternative, but plausible explanation is

all but impossible to discern."). Further suggesting the intentional nature of Defendant's conduct

is that rather than immediately apologizing to Plaintiff in the aftermath of the altercation,[4] a

natural reaction which the Court would expect of someone who truly accidentally knocked

someone over, Defendant yelled obscenities at her[5] instead of checking if her sister was hurt.[6] In

fact, it appeared to the Court based upon Defendant's testimony that one of her primary concerns

in the aftermath of the altercation was that Plaintiff would seek revenge against her, rather than

---

[4] While the Aunt recalls that after the incident Defendant went into her bedroom and was upset and crying and may have told her she could not believe she did that and was sorry, neither the Aunt nor Defendant recalled with any clarity the content of their conversation, with the Aunt describing the details of that conversation as "cloudy" and Defendant only speculating that she might have expressed concerns to her Aunt for Plaintiff in the bedroom. *See* Trial Tr. 32:11-16, 33:17-23, 231:10-14.

[5] Defendant's testimony denying cursing at her sister after the altercation is simply not credible given the testimony from sequestered witnesses, Mr. Menges and the Plaintiff, that Defendant was screaming and yelling obscenities after Mr. Menges lifted Defendant off Plaintiff, and the Aunt that the Defendant and Plaintiff continued to argue after Mr. Menges lifted Defendant off Plaintiff. Trial Tr. 31:19-22, 50:16-51:10, 54:4-12, 56:16-57:16, 76:8-9, 127:6-15, 131:7-13, 153:18-154:3, 225:6-7.

[6] While several weeks after the Birthday Party altercation, on December 19, 2017, the Defendant might have expressed some remorse over the Plaintiff's injury on a phone call with her Mother, the police had already filed a criminal complaint against her at that point, and expressing remorse after the fact to a third party who did not witness the incident is not significantly probative into Defendant's intent at the moment of the incident. *See* Trial Tr. 172:21-175:22, 177:3-7. An apology to Plaintiff in the immediate aftermath of the fall would be much more probative of her intent in knocking Plaintiff over in that moment and suggest that it truly was an accident.

that Plaintiff could have been injured. Trial Tr. 230:4-8. To this day, despite insisting that

Defendant injured her sister by accident, she has *still* never apologized directly to the Plaintiff.

Based on all the foregoing, the injury attributable to Defendant pushing Plaintiff to the ground at

the Birthday Party was willful under § 523(a)(6).

Similarly, the injury attributable to Defendant shoving Plaintiff to the ground was

malicious. The attack on Plaintiff from behind was unprovoked,[7] without cause or excuse, and

completely unjustified. There is no evidence whatsoever that Plaintiff physically touched

Defendant prior to the moment that Defendant attacked her, otherwise provoked a physical fight,

or that Defendant was acting in self-defense in any way when she attacked Plaintiff from

behind.[8]

---

[7] While Defendant appeared to primarily argue that she only accidentally caused Plaintiff to fall, she seemed to simultaneously suggest that by mentioning the deed partition action, Plaintiff provoked the altercation. The Court observes that not a single witness to the conversation in the living room leading to the physical altercation recalled any mention of a deed partition action prior to the physical altercation besides Defendant. Nevertheless, even if Plaintiff had mentioned that she filed a deed partition action against Defendant, that would not justify Defendant forcefully physically attacking Plaintiff from behind in the front yard of their Aunt's home without warning.

[8] Plaintiff was completely uninvolved in the negotiation of Defendant's guilty plea to simple assault by mutual combat. Trial Tr. 92:21-23. She was not consulted and was not a party to those negotiations or that proceeding. Because Plaintiff was not a party to the criminal case against Defendant, she cannot be bound by a label of mutual combat. "Federal courts are required to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." *Ramsey v. Harley,* No. Civ.A. 00–3909, 2002 WL 32349129 at *1 (E.D. Pa. Mar. 8, 2002). Under Pennsylvania law, collateral estoppel precludes the relitigation of an issue of fact or law only when the party against whom the plea is asserted was a party or in privity with a party in the prior case. *Office of Disciplinary Counsel v. Kisewetter,* 585 Pa. 477, 889 A.2d 47, 50 (2005).

Furthermore, there is also no evidence that charges were ever brought against Plaintiff. In any event, the facts which Defendant admitted to as part of her guilty plea do not include any reference to Plaintiff physically touching Defendant, only that "the victim, Jennifer Menges, got into an [sic] verbal argument with the defendant…During the course of the argument Ms. Collins tackled the victim to the ground, causing a large swelling to the victim's right knee." Ex. M-16 Guilty Plea & Sentencing Tr. 3:12-23.

Additionally, any comments which the judge in the criminal proceedings may have directed to Plaintiff regarding the incident were clearly tangential to the main proceedings and made only after the plea had already been accepted. Nor do those comments suggest in any way that Plaintiff physically struck or touched Defendant at the Birthday Party before the altercation. Given that Plaintiff was not facing any criminal charges at the time, there would have been no reason for her to respond to the judge's comments in that regard.

**IV.      CONCLUSION**

Based on the evidence and testimony presented at trial, the Court concludes that the

Arbitration Award is a debt for a willful and malicious injury under 11 U.S.C. § 523(a)(6).

Date: October 7, 2021                    _____
                                         Honorable Ashely M. Chan
                                         United States Bankruptcy Judge